UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GEORGE INFANTE, the Executor
of the Estate of Rosemary Infante,

                                  Plaintiff,                    DECISION AND ORDER

    -v-
                                                      09-CV-6406 CJS

CAROLINE R. DIGNAN, Medical Examiner
for Monroe County, New York, and
PAUL D. GOSINK, Deputy Medical
Examiner for Monroe County, New York,

                                 Defendants.

_____

APPEARANCES

For Plaintiff:                    Thomas J. Marcelle, Esq.
                                Two E-Commerce Square, 3rd Floor
                                Albany, New York 12207

For Defendants:                Howard A. Stark, Esq.
                                Monroe County Department of Law
                                39 West Main Street, Room 307
                                Rochester, New York 14614

INTRODUCTION

       This is an action pursuant to 42 U.S.C. § 1983 ("Section 1983"), in which Plaintiff maintains that Defendants violated the federal constitutional rights of Rosemary Infante, ("Ms. Infante") deceased, when they classified her death as a suicide.  Now before the Court is Defendants' motion (Docket No. [#13]) to dismiss.  For the reasons that follow, the application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint ("the Complaint") in this action.  On April 16, 2006, Ms. Infante died of an overdose of prescription anti-depressant medication.  Early on the morning of that day, one of Ms. Infante's daughters found her collapsed on the floor of her bedroom.  Ms. Infante told her daughter, "I'll be up soon and we will have a regular day."  However, Ms. Infante remained on the floor and died a short time later.  In the days preceding her death, Ms. Infante was "ecstatic" over being reunited with her two adopted daughters, ages ten and five.  Ms. Infante was also looking forward to traveling out of town the following week to visit her parents, and had recently had her car serviced in preparation for that trip.  Ms. Infante also had plans to visit a friend later on the day that she died, which was Easter Sunday.  Ms. Infante gave no indication that she was suicidal, and she left no suicide note. Additionally, Ms. Infante's psychiatrist indicates that she was not suicidal. Amended Complaint ¶ 80.

Ms. Infante had "many health issues and was forced to manage a total of 14 different prescription medications." Amended Complaint ¶ 12.  Ms. Infante "at times had difficulty administering the precise dosage of each drug at the precise time," and she had previously accidentally overdosed on pain medication. *Id*. at ¶ ¶ 13, 16-17.  Days prior to her death, medical testing indicated that Ms. Infante's "blood coagulation levels" were "severely unbalanced," which can "cause weakness and confusion." *Id*. at ¶ ¶ 18-20.

The Office of the Monroe County Medical Examiner investigated Ms. Infante's death and performed an autopsy.  In connection with such investigation, Defendants did not

collect Ms. Infante's prescription medication bottles from her home.  Defendants' autopsy report contained certain inaccuracies concerning Ms. Infante's height and the condition of her teeth. *Id*. at ¶ ¶ 47-48.  In investigating the cause of Ms. Infante's death, Defendants did not analyze "the potential interactions of the prescription drugs present in [her] system. *Id*. at ¶ 50.  During Defendants' investigation, Ms. Infante's father, plaintiff George Infante ("Plaintiff"), a retired Albany County Sheriff and New York State Police Investigator, provided Defendants with information concerning Ms. Infante's medical conditions and medications.  Plaintiff also provided Defendants with "contact information" for Ms. Infante's doctors.  Nevertheless, Defendants did not utilize such information.  On August 8, 2006, Defendants concluded that Ms. Infante's death was a suicide, caused by "multiple drug intoxication." *Infante v. Dignan*, 12 N.Y.3d 336, 339, 879 N.Y.S.2d 824, 825 (2009).

Plaintiff subsequently commenced an action in New York State Supreme Court, Monroe County, pursuant to New York Civil Practice Law and Rules ("CPLR") Article 78, seeking a determination that Defendants' classification of Ms. Infante's death as a suicide was arbitrary and capricious.  Supreme Court dismissed the action, finding that "there was sufficient information on the record for a reasonable person to make a finding of suicide." *Infante v. Dignan*, 12 N.Y.3d at 339, 879 N.Y.S.2d at 826.  New York State Supreme Court, Appellate Division Fourth Department, reversed the dismissal, finding that the evidence was insufficient "to rebut the [common law] presumption against suicide, and thus was arbitrary and capricious." *Id*., 12 N.Y.3d at 339-340, 879 N.Y.S.2d at 826 (citation and internal quotation marks omitted).  In that regard, the Appellate Division stated:

Supreme Court erred in dismissing the petition and, instead, should have granted it inasmuch as the evidence before respondents was insufficient to rebut the presumption against suicide. It is well established that "[t]he presumption [against suicide] springs from strong policy considerations [and also] embod[ies] natural probability" (*Schelberger v. Eastern Sav. Bank*, 60 N.Y.2d 506, 510, 470 N.Y.S.2d 548, 458 N.E.2d 1225; *see generally Green v. William Penn Life Ins. Co. of N.Y.*, 48 A.D.3d 37, 39, 848 N.Y.S.2d 109). Indeed, it is "one of the strongest presumptions in the law" (*Schelberger v. Eastern Sav. Bank*, 93 A.D.2d 188, 190, 461 N.Y.S.2d 785, affd. 60 N.Y.2d 506, 470 N.Y.S.2d 548, 458 N.E.2d 1225), and it "constitutes a statement of public policy of broad application rather than prescribing a means for resolving the competing claims to justice in an individual case" (*Schelberger*, 60 N.Y.2d at 510, 470 N.Y.S.2d 548, 458 N.E.2d 1225). "The presumption arises in recognition of the fact that self-destruction 'is contrary to the general conduct of [hu]mankind' " (*Schelberger*, 93 A.D.2d at 192, 461 N.Y.S.2d 785, *quoting Mallory v. Travelers' Ins. Co.*, 47 N.Y. 52, 54-55), and "of the truth drawn from general human experience, that death by suicide is an improbability [and] that most [individuals] cling to life" (*Wellisch v. John Hancock Mut. Life Ins. Co.*, 293 N.Y. 178, 184, 56 N.E.2d 540).

Although the presumption against suicide has most commonly been applied in the context of an action to recover the proceeds of a life insurance policy (*see e.g. Schelberger*, 60 N.Y.2d 506, 508, 470 N.Y.S.2d 548, 458 N.E.2d 1225; *Begley v. Prudential Ins. Co. of Am.*, 1 N.Y.2d 530, 532, 154 N.Y.S.2d 866, 136 N.E.2d 839; *Wellisch*, 293 N.Y. 178, 180, 56 N.E.2d 540), we nevertheless conclude that it should be applied equally in the context of this proceeding seeking review of a medical examiner's determination, particularly in view of the statement of the Court of Appeals that the presumption is to be broadly applied (*see Schelberger*, 60 N.Y.2d at 510, 470 N.Y.S.2d 548, 458 N.E.2d 1225). To conclude otherwise would be to fail to recognize "the underlying nature and strength of the presumption" ( *Schelberger*, 93 A.D.2d at 189, 461 N.Y.S.2d 785), and to ignore the above-quoted language of the Court of Appeals in *Schelberger* and *Wellisch*.

*Infante v. Dignan*, 55 A.D.3d 1258, 1259, 865 N.Y.S.2d 167, 168 (4th Dept. 2008).

However, the New York Court of Appeals reversed, stating, in pertinent part:

New York's common-law presumption against suicide has no role to play in a medical examiner's determination of the cause or manner of a decedent's death, or the judicial review of such a determination (*see e.g.* Public Health Law § 4143[3] [directing medical examiner to certify whether a death from external causes was " probably accidental, suicidal or homicidal" (emphasis added)]). The presumption is an evidentiary rule relevant to resolving

disputes over life insurance proceeds ( *see Green v. William Penn Life Ins. Co. of N.Y.*, 12 N.Y.3d 342 [2009]   [decided today] ). We have never considered the presumption in any other context.

As a statutory matter, the County Law requires a medical examiner to "determine the means or manner of death" (County Law § 674[3][a]; § 671) for the benefit of the public at large rather than for the benefit of individuals, including a decedent's family members ( *see e.g. Lauer v. City of New York*, 95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184 [2000] [New York City medical examiner did not owe duty of care to father of child whose death was wrongly attributed to homicide] ). If medical examiners were forced to leaven their decision-making with a common-law evidentiary presumption, the medical and scientific quality of their work would be seriously compromised to the detriment of the citizenry.

*Infante v. Dignan*, 12 N.Y.3d at 340, 879 N.Y.S.2d at 826 - 827.  The Court of Appeals further found that the Medical Examiner's determination, that Ms. Infante committed suicide, was not arbitrary, and had a "reasonable basis." *Id.*, 12 N.Y.3d at 341, 879 N.Y.S.2d at 827.  On this point, the Court of Appeals stated:

The results of [the drug screen] analysis, which were reported by an experienced forensic toxicologist, disclosed an extremely high heart blood concentration of the drug fluoxetine (commercially known as Prozac)-a level 18 to 20 times higher than would be expected with normal therapeutic usage. In addition, the level of a fluoxetine metabolite in decedent's liver was comparatively high in relation to the parent drug's level in her heart blood. The medical examiner characterized these autopsy and toxicological findings as "most significant" in leading him to conclude that decedent's manner of death was suicide. In his opinion, these levels and their ratio were consistent with intentional excessive consumption, but not chronic overusage or accidental overdose.

*Id*.

On August 7, 2009, Plaintiff commenced this action.   Plaintiff contends that Defendants deprived Ms. Infante of liberty without due process, in violation of the Fourteenth Amendment.   Specifically, Plaintiff contends that Ms. Infante had a "liberty interest in ensuring [that] the government does not make a wrongful determination of

suicide." Amended Complaint ¶ 113.  As for the source of this liberty interest, Plaintiff states that it is "an ancient and historic liberty possessed by free people." *Id*.  Plaintiff indicates that the due process necessary to protect this right "should include a presumption against suicide, an investigation into whether the deceased intended to commit suicide, and a review of the [Medical Examiner's] determination by a neutral fact-finder." *Id*. ¶ 115. Plaintiff further states that an Article 78 Proceeding does not provide an adequate post-deprivation remedy, since under the arbitrary and capricious standard of review, "defendants can make a determination of suicide that is clearly wrongful as long as they have some minimum basis for their decision.  A proceeding that allows the government to make and let stand a clearly wrongful deprivation of liberty defeats the reason behind the procedural due process." *Id*. ¶ 118.  Plaintiff also contends that Article 78 fails to provide an adequate post-deprivation remedy because it did not afford Plaintiff with an evidentiary hearing. *Id*. ¶ 119.

On March 5, 2010, Defendants filed the subject motion to dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  Defendants contend, *inter alia*, that the Complaint fails to state a due process claim, and that Plaintiff's claim is barred by *res judicata*.

## DISCUSSION

Defendants seek the dismissal of the complaint for failure to state a claim, pursuant to FRCP Rule 12(b)(6).  The applicable legal standard is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon

> which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

"Liberty interests may arise from two sources-the Due Process Clause itself and the laws of the States." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (citations and internal quotation marks omitted). In this case, Plaintiff maintains that Ms. Infante had a "liberty interest in not having her death wrongfully determined a suicide without due process of law." (Pl. Memo of Law at 8). More specifically, Plaintiff describes this liberty interest as involving Ms. Infante's "sacred honor": "It is this liberty – sacred

honor – that Rosemary's father is pursuing as executor of her estate." (Pl. Memo of Law

at 36).  Plaintiff insists that the instant case does not involve a "stigma-plus due process

claim," and that if it did, he would lose: "Defendants say that this is a case [of] defamation.

It is not.  If it were, plaintiff would be forced to concede that no cause of action lies." *Id*. at

20.

> However, the Court disagrees, and finds that Plaintiff's claim does, in fact, amount

to a stigma-plus claim:

> The question of whether one's good name and standing, and the interest in protecting that reputation, constitutes a protectible liberty interest has been considered in a string of Supreme Court and Second Circuit cases. The Supreme Court held in 1971 that a protectible liberty interest may be implicated "[w]here a person's good name, reputation, *honor*, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). A year later, the Court held that a government employee's liberty interest would be implicated if he were dismissed based on charges that imposed "on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

> *Constantineau* and *Roth* were followed a few years later by the Court's decision in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the Court held that damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id*. at 701, 96 S.Ct. at 1161. Rather, the Court held, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest. *Id*. We have previously interpreted this holding to mean that "stigma plus" is required to establish a constitutional deprivation. *See Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989).

*Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (emphasis added); *see also, Walentas*

*v. Lipper*, 862 F.2d 414, 420 (2d Cir. 1988) ("It is clear that where a person's good name,

reputation, *honor*, or integrity is at stake because of what the government is doing to him,

a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.  However, damage to one's reputation alone is not enough to implicate due process protections.  Rather, something more, such as discharge from governmental employment, must accompany the alleged public defamation.") (emphasis added, citations and internal quotation marks omitted).  Clearly, Defendants' determination that Ms. Infante committed suicide is harmful to her reputation and honor.

Defendants do not argue that a false determination that one committed suicide is insufficiently stigmatizing to support a stigma-plus claim.  And in the employment context, the Second Circuit has indicated that an allegation of attempted suicide would be sufficiently stigmatizing to meet the "plus" requirement of a stigma-plus claim:

> We do, however, find that a stigma attached because of his dismissal and that he was, therefore, entitled to a hearing to confront the allegations placed in his personnel file.   . . .   Here the exact language of the charge [which resulted in the termination of the plaintiff's employment] is not known, but it appears to state that Velger 'while still a trainee . . . had put a revolver to his head in an apparent suicide attempt.' Such a charge suggests to most of us such severe mental illness that it deprives one of the capacity to do any job well. It thus differs from the usual derogatory charge that is levelled at the capacity to do a specific job. Certainly, no more serious charge could be levelled at a police officer."),

*Velger v. Cawley*, 525 F.2d 334, 336 (2d Cir. 1975) (citations omitted), *r'vd on other grounds sub nom., Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *see also, Nathanson v. U.S.*, 630 F.2d 1260, 1265 (8th Cir. 1980) ("The requisite stigma has generally been found in cases involving charges of dishonesty, drug usage or grave character defects.") (*citing Velger v. Cawley*, other citations omitted), *cert. den.* 464 U.S. 939, 104 S.Ct. 352 (1983).

However, Defendants maintain that Plaintiff cannot meet the "plus" requirement of a stigma-plus claim, since she is deceased.   In that regard, Defendants state: "Claims for harm to one's reputation do not survive death in New York.  It is well settled New York law that libel or slander upon the memory of a deceased person which makes no direct reflection upon his relatives gives them no cause of action for defamation." Def. Memo of Law at 16 (citations and internal quotation marks omitted).   On this point, Defendants are correct. *See*, *Rose v. Daily Mirror*, 284 N.Y. 335, 337, 31 N.E.2d 182, 182 (1940) ("In this State, however, it has long been accepted law that a libel or slander upon the memory of a deceased person which makes no direct reflection upon his relatives gives them no cause of action for defamation.").

Here, the alleged constitutional injury to Ms. Infante[1] occurred after her death, and it appears well settled that a deceased person has no constitutional rights:

> "After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir.1979). The alleged cover-up by Manders and Ward took place after Joseph Love was killed, and thus could not have violated any of Joseph Love's constitutional rights. *Id.*; *Guyton v. Phillips*, 606 F.2d 248 (9th Cir.1979) ("the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death."). We do not hold that cover-up of a wrongful death is without civil or criminal effect; rather, we hold that "the victims of a cover-up are the decedent's survivors, not the decedent himself." *Gibson [v. City of Chicago]*, 910 F.2d [1510,] 1523 [(7th Cir. 1990)], *citing, Bell v. City of Milwaukee*, 746 F.2d 1205, 1264 (7th Cir.1984). Thus, to the extent that plaintiffs allege that, by covering up the circumstances of Joseph Love's death, Manders and

---

[1]The Amended Complaint alleges that Rosemary Infante's rights were violated, not Plaintiff's. *See*, Amended Complaint ¶ 106 ("Plaintiff Infante seeks redress in this Court for the violation of Rosemary's Constitutional right to sacred honor which includes her liberty interest in not having her death wrongfully determined a suicide without due process of law."); *see also, id*. at ¶ 110 ("This erroneous declaration violated the decedent's Constitutional rights[.]").

10

Ward violated Joseph Love's Constitutional rights, the Motion to Dismiss is granted.

*Love v. Bolinger*, 927 F.Supp. 1131, 1136 (S.D.Ind. 1996); *see also, Ford v. Moore*, 237 F.3d 156, 165 (2d Cir. 2001) ("Even if there were a viable claim against Moore for conduct after Ford's death, the death would have extinguished any claim of Ford's[.]"); *Estate of Morris ex rel. Morris v. Dapolito*, 297 F.Supp.2d 680, 691 n.9 (S.D.N.Y. 2004) (Referring to "the well established proposition stated in *Ford v. Moore*, 237 F.3d 156, 165 (2d Cir.2001), that . . . a dead person has no constitutional rights[.]").

For example, in *Helmer v. Middaugh*, 191 F.Supp.2d 283 (N.D.N.Y. 2002), *aff'd* 159 Fed.Appx. 300 (2d Cir. Dec. 15, 2005), the court dismissed constitutional claims against a defendant whose only involvement in the alleged violation occurred after the decedent's death:

> [Lt. Lisi's] sole involvement is that he is alleged to have ordered an[] autopsy and photographs of B. Helmer's body, and to have published the autopsy photographs to others, in violation of B. Helmer's and the Helmer family's right to privacy.
>
> \*\*\*
>
> With regard to the claims of B. Helmer, Lt. Lisi must be dismissed. Even assuming all of the facts in the favor of the plaintiff, *a dead man does not have any constitutional rights.* As the allegations concerning Lt. Lisi are limited to conduct occurring after the death of B. Helmer, plaintiff's amended complaint does not allege a viable cause of action against him. In addition, because the proposed Second Amended Complaint alleges no additional facts to demonstrate Lt. Lisi's involvement prior to the death of B. Helmer, it does not cure this fatal defect as to Lt. Lisi. (See Proposed Sec.Am.Compl. ¶¶ 81-89.)

*Id*. at 284-285 (emphasis added, citation omitted).  Moreover, in *Estate of Conner by Conner v. Ambrose*, 990 F.Supp. 606, 618 (N.D.Ind. 1997), the district court dismissed a Section 1983 lawsuit against a coroner, for improperly performing an autopsy, stating:

"A person's civil rights may only be violated while that person is alive. After death, one is no longer a 'person' within our constitutional and statutory framework and has no rights of which he may be deprived. . . .  It is clear that § 1983 does not provide a cause of action on behalf of a deceased based upon alleged violations of the deceased's civil rights which occurred after his death." (citations omitted).

Consequently, while the Court is sympathetic to Plaintiff, it agrees with Defendants that the Complaint fails to state a claim upon which relief can be granted.  In making this determination, the Court expresses no opinion concerning the cause of Ms. Infante's death.

CONCLUSION

Defendants' motion to dismiss [#13] is granted, and this action is dismissed with prejudice.  The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated:       March 21, 2011
             Rochester, New York

                                    ENTER:


                                     /s/ Charles J. Siragusa_____
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

12